| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | |

ANITA CHIOKE,

                Plaintiff,

– against –                  **MEMORANDUM & ORDER**

THE DEPARTMENT OF EDUCATION OF THE   15-cv-01845 (ERK) (CLP)
CITY OF NEW YORK, THE BOARD OF
EDUCATION OF THE CITY SCHOOL
DISTRICT OF THE CITY OF NEW YORK,
AIMEE HORWITZ, individually and on behalf of
the Department of Education of the City of New
York, and NEIL MONHEIT, individually and on
behalf of the Department of Education of the City
of New York,

                Defendants.

Korman, *J.*:

      Defendant Department of Education (DOE) moves for reconsideration of the order entered on June 25, 2018 ("Order"), which granted summary judgment in DOE's favor on all claims but one: plaintiff Anita Chioke's Title VII retaliation claim based on a formal reprimand letter issued to her. *See Chioke v. Dep't of Educ.*, No. 15-cv-01845 (ERK) (CLP), 2018 WL 3118268 (E.D.N.Y. Jun. 25, 2018). DOE asks that I reconsider my finding that a genuine dispute of material fact exists as to whether the reprimand letter was an adverse employment action causally connected to plaintiff's complaints of discrimination made days earlier.

## BACKGROUND

      Though familiarity with the facts as set out in the Order is assumed, the relevant background is briefly recounted here. Plaintiff Anita Chioke, a black woman of Liberian national origin, began working for the DOE in 2003 and became Assistant Principal of Foundations Academy in January 2013. Pl.'s Resp. to Def.'s Rule 56.1 Statement, ECF No. 31-7, at ¶¶ 1, 2, 14,

22-24. Following months of back-and-forth regarding Chioke's job performance, on January 24, 2014, Chioke acknowledged receipt of a formal reprimand letter from Principal Jimmy Molina, which detailed various shortcomings in Chioke's work and behavior. Def.'s Decl. Supp. Mot. Summ. J., Ex. S, ECF No. 31-3, at 105. Molina warned "that this incident may lead to further disciplinary actions including as [sic] unsatisfactory [performance] rating." *Id.*

The reprimand set off a series of letters between Molina and Chioke, who responded to Molina's letter on February 3, 2014 with a letter of her own, defending her job performance and alleging that Molina's letter mischaracterized their previous interactions. *See* Def.'s Decl. Supp. Summ. J., Ex. T, ECF No. 31-3 ("Feb. 3 Ltr."), at 107-11. Chioke's February 3 letter also memorializes a conversation between Molina and Chioke, in which Molina disclosed that superintendent Aimee Horwitz instructed him to terminate Chioke's employment by "putting a letter in [her] file." *Id.* at 107. Molina told Chioke that Horwitz "is just a plain racist," who regularly disparaged black teachers. *Id.* Accordingly, Chioke indicated that she "intend[ed] to pursue this case with the E.E.O.C." *Id.* This February 3 letter complaining of discrimination is the protected activity forming the basis of Chioke's retaliation claim.

The alleged retaliatory action came three days later, on February 6, in the form of another letter from Molina, which stated that "[a] recent review of the lateness record in my office indicates that you have been late to work," without listing any specific dates of offense. Def.'s Decl. Supp. Summ. J., Ex. U, ECF No. 31-3 ("Feb. 6 Ltr."), at 113. The next day, on February 7, Chioke replied by letter explaining that she had been late due to inclement weather, and she accused Molina of issuing the reprimand because her union had filed a "Step 1 Grievance" against him. Def.'s Decl. Supp. Summ. J., Ex. V, ECF No. 31-3 ("Feb. 7 Ltr."), at 124. Indeed, on February 6, the same day as Molina's letter, Chioke's union representative had requested a grievance conference seeking to

remove the January 24 reprimand from Chioke's personnel file for inadequate notice and because Molina met with Chioke without union representation. *See* Step 1 Grievance, ECF No. 41, at 4.

## DISCUSSION

The Order entered on June 25, 2018 concluded that the above facts made out a Title VII retaliation claim. Defendant moves for reconsideration. The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "Moreover, a party may not use a motion for reconsideration to 'relitigate an issue already decided' by advancing novel arguments that could have been raised previously." *Schleifer v. Berns*, No. 17 Civ. 1649 (BMC), 2017 WL 4011239, at *1 (E.D.N.Y. Sept. 11, 2017) (quoting *Shrader*, 70 F.3d at 257).

### I. The Order's Analysis

A plaintiff asserting a Title VII retaliation claim "must demonstrate that '(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (per curiam) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)). The Order started on the uncontested premise that Chioke's February 3 letter constituted a protected activity of which DOE was aware and went on to evaluate the remaining two factors. *Chioke*, 2018 WL 3118268, at *11.

Determining whether an action is materially adverse is objective; a materially adverse action is "one that is 'harmful to the point that [it] could well dissuade a reasonable worker from

3

making or supporting a charge of discrimination." *Id.* at *12 (quoting *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010)). As relevant here, letters of reprimand can "lead [an] employee to believe (correctly or not) that [her] job is in jeopardy." *See Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 165 (2d Cir. 2011). This is true "even when . . . the letter does not directly or immediately result in any loss of wages or benefits, and does not remain in the employment file permanently." *Id.* Considering Title VII's broad anti-retaliation protection, *see Hicks*, 593 F.3d at 165, the Order concluded that a jury could find that the formal reprimand issued to Chioke—alleging lateness and possible further disciplinary action—could dissuade a reasonable worker from complaining of discrimination. *Chioke*, 2018 WL 3118268, at *13

Regarding causation, the "three-day gap between Chioke's protected activity and Molina's February 6 letter was 'sufficiently short to make a prima facie showing of causation indirectly through temporal proximity.'" *Id.* (quoting *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013)). In response, DOE failed to offer a non-pretextual justification. *Id.* Even if Chioke had actually been late, the letter identified no dates in particular. *Id.* And assuming the letter referred to Chioke's admitted lateness on February 6, Chioke presented evidence sufficient to demonstrate that inclement weather caused her lateness and no other late-arriving teachers were similarly disciplined. *Id.* For these reasons, Chioke's retaliation claim survived summary judgment. *Id.* at *13-14.

## II. Basis for Reconsideration

DOE now argues that no reasonable jury could find that the February 6 letter satisfies the elements of material adverse action and causation, *first* because Chioke continued to lodge complaints after receiving the letter, and *second* because her February 7 response suggested that Molina had a non-retaliatory motive. Without deciding whether these questions are properly

4

presented on a motion for reconsideration, *see Shrader*, 70 F.3d at 257, neither compels me to revisit my earlier findings.

  A. *Chioke's Subsequent Complaints*

  Because Chioke made further complaints *after* the February 6 letter, DOE argues, she could not possibly have been dissuaded from leveling charges of discrimination. This misunderstands the legal standard. As DOE acknowledges, the standard for material adversity is objective. Mem. Law Supp. Def.'s Mot. Recons. 5. As such, the question is not how Chioke reacted to the February 6 letter, but how a "reasonable worker" would react. *See Hicks*, 593 F.3d at 165. Granted, Chioke's subjective reactions can help inform what a reasonable worker would do in response to the letter. *See Tepperwein v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 572 (2d Cir. 2011) (explaining that "while the test is an objective one, it is relevant that [plaintiff] was not deterred from complaining"). But her individual actions are not dispositive of the objective inquiry at hand. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68-69 (2006) (explaining that the objective standard "avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings"); *Laudadio v. Johanns*, 677 F. Supp. 2d 590, 613 (E.D.N.Y. 2010) (fact that retaliatory action did not dissuade plaintiff from filing a second EEOC complaint was not dispositive, as plaintiff's "subjective perception of the alleged adverse action is not determinative"); *Wharton v. County of Nassau*, No. 10-CV-0265 (JS)(AKT), 2013 WL 4851713, at *11 (E.D.N.Y. Sept. 10, 2013) (declining to consider "Plaintiff's subjective thoughts regarding Defendants' actions" for purposes of determining material adversity). For the reasons explained in the Order, there is a sufficient basis to conclude that the February 6 letter would have dissuaded a reasonable worker from complaining of discrimination, notwithstanding Chioke's subsequent complaints.

### B. *February 7 Letter*

DOE next argues that Chioke's February 7 response to Molina's February 6 letter shows she did not believe Molina harbored a discriminatory motive, vitiating the element of causation. Chioke's February 7 letter states, in relevant part, "I believe that you were upset when you were informed of [the] Step 1 Grievance that was filed against you on my behalf," without referencing discrimination. Feb. 7 Ltr. According to DOE, this is proof that Chioke thought Molina disciplined her solely because her union representative filed the grievance, not because Chioke had engaged in protected activity. Indeed, the grievance was filed the same day as Molina's alleged retaliation.

The fact that Chioke attributed Molina's animus to the union grievance casts doubt on Chioke's theory that it was her February 3 letter that precipitated the February 6 disciplinary letter to file. Nevertheless, while Chioke "must show that retaliation was a 'but-for' cause of the adverse action," she is not required to prove that "retaliation was the only cause of the employer's action." *Kwan*, 737 F.3d at 845-46. Thus, Chioke's admission does not necessarily end the inquiry. *See id.* at 846 n.5 ("[A] plaintiff's injury can have multiple 'but-for' causes, each one of which may be sufficient to support liability."); *cf. Laudadio*, 677 F. Supp. 2d at 613 (plaintiff's "subjective perception of the alleged adverse action is not determinative"). While the February 7 letter is a potentially strong piece of evidence, I still "cannot confidently say that *no* reasonable jury could find that, absent the retaliatory animus, Molina still would have issued the February 6 letter." *Chioke*, 2018 WL 3118268, at *14.

Specifically, the February 7 letter does not alter the calculus sufficient to eliminate all disputes of material fact as to Molina's intent. The grievance relates to the same January 24 reprimand that was the subject of the protected activity—Chioke's February 3 rebuttal letter complaining of discrimination and threatening to file an EEOC complaint. *See* Step 1 Grievance,

ECF No. 41, at 4. As discussed, Chioke has demonstrated that "the protected activity was followed closely by discriminatory treatment," which is sufficient to establish prima facie causation. *Hicks*, 593 F.3d at 170 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). While temporal proximity alone is "insufficient to defeat summary judgment at the pretext stage," "a plaintiff may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence[,] . . . to defeat summary judgment at that stage." *Kwan*, 737 F.3d at 847. To this end, Chioke put forward the following evidence of pretext:

- The February 6 letter reprimanding her for lateness failed to specify which days she was late;

- An instance of recent lateness, to which Chioke assumed the February 6 letter may have been related, was caused by a documented snowstorm;

- As an administrator, Chioke knew that she was subjected to disparate discipline for lateness.

*Chioke*, 2018 WL 3118268, at *13. As explained in the Order, prior to February 6, "Molina had never formally disciplined Chioke for tardiness, and her late arrival during a snowstorm was an odd reason to do so, especially when she commuted from Rockland County to Brooklyn via a bus and three trains." *Id.* at *14; *see Mauze v. CBS Corp.*, No. 15-CV-4905(RJD) (SLT), 2018 WL 5115564, at *14 (E.D.N.Y. Oct. 19, 2018) (exaggeration of seriousness of performance issues demonstrates pretext). In addition, Chioke's February 3 letter recounted a conversation with Molina indicating that she had been disciplined because of her race. Feb. 3 Ltr. Notwithstanding Chioke's reference to the grievance in her February 7 letter, a jury could conclude that retaliation was a but-for cause of the adverse employment action. *See Kwan*, 737 F.3d at 846 ("A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its actions.").

In a close case like this one, "[t]he determination of whether retaliation was a 'but-for' cause, rather than just a motivating factor, is particularly poorly suited to disposition by summary judgment, because it requires weighing of the disputed facts, rather than a determination that there is no genuine dispute as to any material fact." *Kwan*, 737 F.3d at 843, 846 n.5 ("[T]here is a 'need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent[.]'" (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008))); *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (same).[1]

## CONCLUSION

Defendant's motion for reconsideration is denied. The case is referred to Magistrate Judge Pollak for discussion of settlement.

SO ORDERED.

*Edward R. Korman*

Brooklyn, New York  Edward R. Korman
October 29, 2018  United States District Judge

---

[1] Though neither party has yet advanced the theory, to the extent Molina may have harbored dual motives, such that "both reasons might have motivated" him, the fact-finder will determine if "the improper reason was not the 'but for' cause of the [retaliation]." *See Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872, 877 (2d Cir. 1988) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Dyle*, 429 U.S. 274 (1977)).